UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES D. WARREN,

       Plaintiff,                      Case No. 06-12498

vs.                                   DISTRICT JUDGE JULIAN ABELE COOK, JR.
                                    MAGISTRATE JUDGE STEVEN D. PEPE
JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION**

**I.**      **BACKGROUND**

Charles Warren brought this action under 42 U.S.C. §405(g) and §1383(c)(3) to challenge a final decision of the Commissioner finding that Plaintiff was not entitled to Disability Insurance Benefits (DIB) under Title II of the Social Security Act and Supplemental Social Security Income (SSI) under Title XVI of the Social Security Act. Both parties have filed motions for summary judgment, which have been referred pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the following reasons, **IT IS RECOMMENDED** that the Commissioner's motion for summary judgement be **GRANTED** and Plaintiff's motion for summary judgment be **DENIED.**

     **A.**      **Procedural History**

Plaintiff applied for DIB and SSI in June 2004 (R. 49, 123), alleging that he became disabled in March 24, 2004, due to chronic lower back pain caused by degenerative disc disease and exacerbated by an injury, as well as arthritis in his hands and hepatis C (R. 62-63). After

1

Plaintiff's claim was initially denied (R. 29-33), a hearing was held on June 14, 2005, before Administrative Law Judge Earl Witten (ALJ) (R. 150-183). Plaintiff was represented by his current attorney, D. Dennis Dudley and Vocational Expert Donald Hecker, Ph.D., (VE) also testified (R. 176-182).

ALJ Witten concluded in a September 8, 2005, decision that Plaintiff was not under a disability as defined by the Act because he remained capable of performing a significant range of light work (R. 19-26). The Appeals Council denied Plaintiff's request for review (R. 5-7).

**B.  Background Facts**

### 1. *Plaintiff's Hearing Testimony and Statements*

Plaintiff was 49 years old at the time of the ALJ's decision (R. 19, 154). He had the equivalent to a high school education (GED) and had received no other vocational training (R. 154). Plaintiff's past work experience included employment as an animal handler/laborer, car wash attendant and trash collector (R. 155). His work as a trash contractor and animal handler/laborer primarily consisted of various types of heavy physical labor (R. 156).[1]

While working as an animal handler/laborer for Ringling Brothers Barnum and Bailey, Plaintiff was kicked in the lower back by a camel and fell on the ground, hitting his right shoulder and head (R. 161-162). As a result of this injury, Plaintiff went to Boston General and was referred to Dr. Corbin in Washington, D.C. (the circus was traveling from Boston to D.C.) (R. 163-164). Plaintiff was diagnosed with spinal deterioration of the L4 and L5 area, proscribed physical therapy, but received no medication (R. 162, 164). After one week, Plaintiff returned to

---

[1] For example, while working as an animal handler/laborer, Plaintiff was responsible for feeding the animals, which required him to utilize wheel barrows loaded with feed weighing 300-400 pounds (R. 158).

work at the circus, but was unable to continue working for more than a couple hours and was subsequently let go (R. 165). He did not collect any benefits or apply for Worker's Compensation (R. 165, 173).

Plaintiff stated that his pain is focused in his lower back, but also travels into his legs causing numbing pain (R. 166). He could sit for twenty or thirty minutes before he needed to get up and stretch, and estimated that he could walk one block (R. 167, 169). In addition, Plaintiff needed to lay down to relieve pain. Plaintiff did not require a cane, but occasionally used a back splint (R. 168). He also explained that he gained a considerable amount of weight since his accident and was now classified as obese (R. 167).

Plaintiff testified that he had not had any type of gainful employment since the accident (R. 168). Yet, he did function as a driver for a couple of months for a shelter (R. 169).

In June 2004, Plaintiff was seen in the Ingham Medical Emergency Room after collapsing on the boardwalk along the river in Lansing (R. 170). Plaintiff also reported seeing Dr. Cook at the Crystal Ray Community Center in Lansing approximately once a month. Dr. Cook monitored Plaintiff's condition and proscribed pain medication. He also monitored Plaintiff's liver due to hepatitis C (R. 171). Plaintiff denied that his liver problems were due to alcohol abuse and indicated he had not used alcohol for eight months prior to the hearing (R. 173).

On July 12, 2004, Plaintiff completed a function report in which he provided information about his daily activities and abilities (R. 75-82). Plaintiff indicated that he was able to prepare simple meals, shop and take care of his personal needs, and that he watched television, listened to music, spent time with others, went to church four days a week and walked for a while.

3

### 2. *Medical Evidence*

On March 25, 2004, Plaintiff went to Capitol Hill Orthopaedics and Rehabilitation (R. 98). He stated the he was kicked in the back by a camel while at work the day before, and fell on the ground, hitting his right shoulder and head. An examination revealed some lumbar tenderness and a limited range of back motion, but normal reflexes, normal sensation, normal motor function and normal straight leg raising. Lumbar x-rays showed "mild" degenerative changes and no acute fracture. His shoulder was asymptomatic and he had a normal range of neck motion. The diagnosis was "contusion" of the lumbar spine. Plaintiff was prescribed Vicodin and three physical therapy visits.

On April 17, 2004, Plaintiff went to Ingram Community Health Center due to back pain (R. 104). An examination revealed deformities of the fingers and toes, suggestive of arthritis, and lumbar tenderness but good muscle strength and normal straight leg raising (R. 104-05). Plaintiff noted that he had a twelve-year history of hepatitis, but was unsure of the type (R. 106). The diagnoses were back injury, hepatitis and arthritis and Plaintiff was prescribed pain medication. Blood tests were also ordered. On April 28, 2004, blood tests revealed hepatitis C antibodies and an elevated rheumatoid factor (R. 96-97).

On May 11, 2004, Plaintiff saw JoAnn Adrian, a nurse practitioner at Ingram Community Health Center, due to back pain (R. 102). Plaintiff said he was unable to complete his three physical therapy visits because he was "called back to work early." Ms. Adrian noted that Plaintiff had alcohol on his breath and he stated that he drank alcohol sometimes. An exam revealed lumbar tenderness, a stiff gait, difficulty getting on the exam table and a deformity on his left pinky finger. The diagnosis was lumbar back pain. Ms. Adrian prescribed pain

medication, ordered lumbar x-rays and blood tests, and noted that Plaintiff needed to abstain from alcohol intake for six months before he could be referred to a specialist for hepatitis C.

On May 20, 2004, lumbar spine x-rays revealed degenerative disc disease consisting of "slight" disc space narrowing at T11-12 and "mild" degenerative facet changes at L4-5 with "slight" subluxation (R. 94). There was no evidence of disc herniation or nerve root compression.

On June 26, 2004, Plaintiff presented to the Ingham Regional Emergency Room, and was proscribed Motrin 400 mg as needed for pain (R. 21). It is also noted that Plaintiff could resume activity as tolerated.

On August 12, 2004, Scott Barnes, the DDS physician, reviewed the record and opined that Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, sit for six hours in an eight-hour day, stand/walk for six hours in an eight-hour day, frequently climb ramps and stairs, occasionally climb ladders, ropes and scaffolds, and occasionally balance, stoop, kneel, crouch and crawl, but needed to avoid hazards such as moving machinery and working at heights (R. 109-11).

In March 2005, blood tests ordered by Peter Cook, M.D., were positive for Hepatitis C and A antibodies (R. 115-16).

On April 18, 2005, Dr. Cooke wrote a note on a prescription pad stating Plaintiff was "unable to work because of a back injury" (R. 122).

On May 3, 2005, a magnetic resonance imaging (MRI) of the lumbar spine revealed degenerative disc disease at L4-5 with "mild" bulging of the disc and "minimal" spinal stenosis (R. 117-18). There was no evidence of a herniated disc or nerve root compression.

### 3. *Vocational Evidence*

VE Hecker began his examination by clarifying the type of work Plaintiff did at the Quick Car Wash (R. 176). Plaintiff indicated that he only had to lift a spay hose or spray wand. VE Hecker then described Plaintiff's past relevant work and defined his exertional and skill levels for these positions. He classified Plaintiff's jobs as an animal handler and trash collector as heavy work and his job as a car wash attendant as light unskilled work (R. 176-77).

The VE was asked to assume the existence of an individual of Plaintiff's age, who had his education and work experience (R. 177). This individual could occasionally lift twenty pounds, routinely lift ten pounds, sit for six hours in an eight-hour day, stand/walk for six hours in an eight-hour day, occasionally bend, twist and turn, but could not crawl, squat, kneel, climb, use air or vibrating tools, work at unprotected heights or around moving machinery, or perform overhead work. In addition, this individual could perform only simple, routine, one-to-three-step process jobs. VE Hecker testified that such an individual could not work at a manual car wash as Plaintiff had done, but could instead perform approximately 15,00 to 16,000 other jobs in the State of Michigan as a light janitor and night janitor, in addition to jobs as an automatic car wash attendant (R. 178).[2] If, in addition to the above-mentioned restrictions, this individual also needed a sit/stand option, he could not perform any of the jobs previously identified, but could still perform approximately 8,000 assembler jobs, 8,000 packager jobs, 1,000 parking lot attendant positions and 1,000 security monitor jobs in the State of Michigan (R. 179).

The VE was then asked to assume the existence of a different hypothetical person who

---

[2] Plaintiff clarified that he did not work in an automatic car wash, and that there was a lot of bending involved in his job (R. 178).

could occasionally lift ten pounds, routinely lift five pounds, stand/walk for two hours in an eight-hour day, sit six hours in an eight-hour day, and occasionally bend, twist and turn, but could not crawl, squat, kneel, climb, use air or vibrating tools, work at unprotected heights or around moving machinery, or perform overhead work. In addition, this individual could perform only simple, routine, one-to-three-step process jobs. The VE testified that such an individual could perform 8,000 jobs as an assembler, 8,000 packager jobs, 1,000 parking lot attendant jobs and 1,000 security monitor positions in the State of Michigan (R. 180). If this person also needed a sit/stand option, he could perform 3,500 assembler jobs, 3,500 packager jobs, 1,000 parking lot attendant jobs and 1,000 security monitor jobs in the State of Michigan (R 181).

Finally, the VE was asked to assume that ALJ Witten found Plaintiff's testimony with respect to his pain, discomfort and limitations to be fully credible. VE Hecker testified that such an assumption would prelude all competitive employment.

### 4. *The ALJ's Decision*

ALJ Witten found that Plaintiff was not under a disability as defined in the Social Security Act at any time through the date of his decision (R. 26). He opined that Plaintiff met the nondisability requirements of the Act through the date of his decision and that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability (R. 25). Further, ALJ Witten found that Plaintiff's degenerative disc disease qualified as a severe impairment. Yet, the severity of Plaintiff's condition did not meet or equal the requirements of any impairment listed in Appendix 1, Subpart P, of Regulations No. 4 (20 C.F.R. § 404.1520(d)) (the "Listing").

ALJ Witten found that Plaintiff retained a residual functional capacity (RFC) for a range

of light work, with only the following limitations: can occasionally lift twenty pounds, routinely lift ten pounds, sit for six hours in an eight-hour day, stand/walk for six hours in an eight-hour day, occasionally bend, twist and turn, but could not crawl, squat, kneel, climb, use air or vibrating tools, work at unprotected heights or around moving machinery. While the record contains a April 18, 2005, statement by Dr. Cooke that Plaintiff was unable to work because of a back injury, the ALJ determined that Dr. Cooke's opinion was "quite conclusory" and "provides no explanation of the evidence relied on in forming that opinion" (R. 22).

ALJ Witten found that Plaintiff's allegations regarding the extent and severity of his limitations and resulting functional limitations were not fully credible (R. 22). The ALJ noted that Plaintiff was able to prepare simple meals, shop and take care of his personal needs, and that he watched television, listened to music, spent time with others, went to church four days a week and walked for a while. Further, the ALJ opined that the record reflects very limited treatment for Plaintiff's alleged totally disabling disability. While Plaintiff first reported he injured his back on March 24, 2004, an x-ray of the lumbar spine on March 25, 2004, revealed only some mild degenerative changes, but no acute fracture. In addition, the examination was essentially normal and Plaintiff was diagnosed with a contusion. The record also reflects that the limited treatment Plaintiff did receive was essentially routine and/or conservative in nature. The ALJ concluded that Plaintiff was able to perform a significant number of jobs in the national economy, such as those identified by the VE (R. 24).

## II. ANALYSIS

### A. Standard Of Review

In adopting federal court review of Social Security administrative decisions, Congress

limited the scope of review to a determination of whether the Commissioner's decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Sherrill v. Sec'y of Health and Human Servs.*, 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence has been defined as "[m]ore than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984).

If the Commissioner seeks to rely on vocational expert testimony to carry her burden of proving the existence of a substantial number of jobs that Plaintiff can perform, other than her past work, the testimony must be given in response to a hypothetical question that accurately describes Plaintiff in all significant, relevant respects.[3] A response to a flawed hypothetical question is not substantial evidence and cannot support a finding that work exists which the Plaintiff can perform.

**B.    Factual Analysis**

Plaintiff raises two challenges to the Commissioner's decision: (1) ALJ Witten failed to

---

[3] *See, e.g., Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (hypothetical question must accurately portray claimant's physical and mental impairments); *Cole v. Sec'y of Health and Human Servs.*, 820 F.2d 768, 775-76 (6th Cir. 1987) (Milburn, J., dissenting) ("A vocational expert's responses to hypothetical questions may constitute substantial evidence only if the questions posed accurately portray the claimant's impairments."); *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987) ("The question must state with precision the physical and mental impairments of the claimant."); *Myers v. Weinberger*, 514 F.2d 293, 294 (6th Cir. 1975); *Noe v. Weinberger*, 512 F.2d 588, 596 (6th Cir. 1975).

9

adequately assess Plaintiff's pain and account for the cumulative effect of his obesity and; (2) ALJ Witten's decision is contrary on its face because it finds that Plaintiff cannot perform past relevant work, including car wash attendant, but then finds that Plaintiff can perform work as an automatic car wash attendant.

### 1. *Plaintiff's Pain and Obesity*

Plaintiff argues that the ALJ failed to adequately access his pain or account for the cumulative effect of his obesity (Dkt. #14, p. 2). He contends that his alleged disability would meet or equal a listed impairment when his pain, the effect of his pain medication, and his obesity are properly considered. *Id*. at 3. Yet, the evidence failed to show that Plaintiff's conditions met or equaled any impairment set forth in the listings. In order to meet an impairment identified in the listings, a claimant must establish, with objective medical evidence, all of the criteria specified in the particular listing. 20 C.F.R. §§ 404.1525, 414.1526, 416.925, 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990). Moreover, it is the plaintiff's burden to show that his conditions meet or equal a listed impairment. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5(1987) (burden of proof is on claimant through the fourth step of the sequential evaluation).

Subjective evidence is only considered to "the extent...[it] can reasonably be accepted as consistent with the objective medical evidence and other evidence (20 C.F.R. 404.1529(a))" *Duncan v. Secretary of Health & Human Servs.,* 801 F.2d 847, 852 (1986). Subjective complaints of a claimant can support a claim for disability, if there is also objective medical evidence of an underlying medical condition in the record that would explain such pain. *See Young v. Secretary of Health & Human Servs.,* 925 F.2d 146, 150-51 (6th Cir. 1990); *Duncan,*

801 F.2d at 852. Yet, in determining the existence of substantial evidence, it is not the function of a federal court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Here, Plaintiff did not identify any objective medical evidence that showed he met or equaled the specific criteria of an impairment identified in the listings.

Plaintiff has degenerative disc disease, a condition identified at Section 1.04 of the Listing of Impairments. Section 1.04 requires, among other things, "compromise of a nerve root (including the cauda equina) or the spinal cord." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04. Here, the lumbar x-rays and MRI showed Plaintiff had degenerative changes, but there was no evidence of nerve root or spinal cord compression (R. 94, 98, 117-18). Thus, the radiologic evidence showed Plaintiff's condition failed to meet the requirements of Section 1.04.

In addition, ALJ Witten found that Plaintiff's allegations regarding the extent and severity of his limitations and resulting functional limitations were not fully credible (R. 22). The ALJ noted that Plaintiff was able to prepare simple meals, shop and take care of his personal needs, and that he watched television, listened to music, spent time with others, went to church four days a week and walked for a while. Further, the ALJ opined that the record reflects very limited treatment for Plaintiff's alleged totally disabling disability. While Plaintiff first reported he injured his back on March 24, 2004, an x-ray of the lumbar spine on March 25, 2004, revealed only some mild degenerative changes, but no acute fracture. Moreover, the examination was essentially normal and Plaintiff was diagnosed with a contusion. The record

also reflects that the limited treatment Plaintiff did receive was essentially routine and/or conservative in nature. This is a valid consideration under the regulations for finding subjective complaints not fully credible. *See* 20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v).

While the record contains an April 18, 2005, statement by Dr. Cooke that Plaintiff was unable to work because of a back injury, the ALJ determined that Dr. Cooke's opinion was "quite conclusory" and "provides no explanation of the evidence relied on in forming that opinion" (R. 22). The regulations limit the subjects upon which the Commissioner must defer to a treating source opinion to "the issue[s] of the nature and severity of your impairment[s]." 20 C.F.R. § 404.1527(d)(2). Under 20 C.F.R. § 404.1527(e), the Commissioner will not defer or provide special significance to treating source opinions on certain subjects that are "reserved to the Secretary" which includes treating physician opinions on a claimant's disability under the Listing, on residual functional capacity or a general and conclusory statement of disability or inability to work. Given the absence of objective medical evidence supporting Plaintiff's claims of pain, and the evidence that Plaintiff could manage his personal care needs and in all other respects is able to function on a daily basis, substantial evidence supports the ALJ's decision to discount Plaintiff's credibility regarding his complaints of pain. Accordingly, Plaintiff has failed to show that his conditions met or equaled any impairment set forth in the listings regarding pain.

Plaintiff next contends that contrary to the evaluation comments found under 1.00(Q) of Appendix 1 the ALJ failed to discuss his obesity despite the fact that Plaintiff weighed 310 pounds at the time of the hearing (Dkt. #14, p 2). Yet, the medical record contains no mention of

Plaintiff's obesity affecting his alleged disability nor was such a condition listed in his Disability Report (R. 62-63). The only mention of obesity in the record is found in the hearing transcript and Plaintiff's counsel makes no argument in support of disability based on this fact (R. 167). It may have been preferable for ALJ Witten to have discussed Plaintiff's obesity in his decision. But on this record, it is inappropriate to say as a matter of law that ALJ Witten was required to discuss the effects of Plaintiff's weight that have so thin a paper record supporting them.

Accordingly, ALJ Witten was acting within the scope of his authority that Congress granted to the administrative agency, and not to this Court. There is substantial evidence in the record to uphold ALJ Witten's determination of non-disability under the Regulations. Therefore, the ALJ did not error by failing to discuss Plaintiff's obesity.

### 2. *Plaintiff's Residual Functional Capacity*

Plaintiff challenges the ALJ's finding at step five of the sequential evaluation. In evaluating Plaintiff's claim at step five, the ALJ relied on the testimony of the vocational expert (R. 24, 26). The VE testified that, assuming Plaintiff's age, education, work experience and an RFC for a range of light work that was more restrictive than the range of light work ultimately found by the ALJ, an individual could perform at least 3,000-4,000 jobs as a light janitor and 12,000 jobs as a nighttime janitor (R. 177-78). The vocational expert also noted that, assuming these same hypothetical factors, the individual could perform jobs as an automatic car wash attendant.

Plaintiff does not dispute the fact that he can perform 3,000-4,000 jobs as a light janitor in the State of Michigan. Nor does he dispute the fact that he can perform 12,000 jobs as a nighttime janitor in the State of Michigan. Because the ALJ's finding that Plaintiff can

13

perform at least 15,000-16,000 jobs in the State of Michigan remains unchallenged, the ALJ's decision should be affirmed for this reason alone, as the Commissioner has clearly met her burden at step five by showing that a substantial number of jobs exists in the economy.[4]

Plaintiff challenges only the ALJ's finding that Plaintiff can perform work as an automatic car wash attendant (Dkt. #12, p. 3-4). Plaintiff argues that this finding is inconsistent with the ALJ's holding that Plaintiff cannot perform his past relevant work as a car wash attendant. *Id.* Yet, Plaintiff's argument is based on his failure to recognize the distinction between automatic and non-automatic car wash attendant jobs. The ALJ found that Plaintiff could perform work as an automatic car wash attendant, but could not perform his past relevant work as a non-automatic car wash attendant (R. 26). These findings are not inconsistent. Moreover, these findings are well-supported by the vocational expert's testimony.

The vocational expert initially testified that Plaintiff could perform his past work as a car wash attendant based on the assumption that Plaintiff had worked as an automatic car wash attendant (R. 177-78). Yet, Plaintiff corrected the vocational expert, and stated "no, this isn't an automatic car wash" (R. 178). Plaintiff then added that his car wash job required a lot of

---

[4] 42 U.S.C. § 423(d)(1) defines "disability" as an inability to engage in any "substantial gainful activity"due to an impairment. Under § 423(d)(2)(A) this means an inability to do "substantial gainful work which exists in the national economy" which is defined as "work which exists in significant numbers either in the region where such individual lives or in several regions." The Sixth Circuit held that 1,350 to 1,800 jobs in a nine-county area satisfied this "significant number" requirement. *Hall v. Bowen*, 837 F.2d 272 (6th Cir. Jan. 20, 1988). *Lee v. Sullivan*, 988 F.2d 789, 794 (7th Cir. 1993), citing various other circuit cases finding 500-1200 "significant."*Allen v. Barnhart,* 357 F.3d 1140, 1145 (10th Cir. 2004); *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir.1992) (found an occupation base reflecting 650-900 statewide jobs was small enough to put the issue in a gray area requiring a remand in order for the ALJ to address the question a "significant" number of jobs under 42 U.S.C. § 423(d)(2)(A) which the federal courts could then review.).

bending. Based on Plaintiff's description, the vocational expert testified that "if it's not an automatic car wash and he manually washed cars, then he could not do his previous work." The vocational expert then testified that, under the hypothetical question, Plaintiff could not do his past work as a non-automatic car wash attendant, but could perform other jobs as an automatic car wash attendant. Thus, the vocational expert distinguished the two different types of car wash attendant jobs.

Based on this distinction and the vocational expert's testimony, the ALJ reasonably and accurately found that Plaintiff could not perform his past relevant work as a non-automatic car wash attendant, but could perform other jobs in the national economy, including a job as an automatic car wash attendant (R. 25-26). Consequently, Plaintiff's challenge to the ALJ's finding at step five of the sequential evaluation lacks merit. Because the Commissioner's decision is supported by substantial evidence, it should be affirmed.

### III. RECOMMENDATION

For the following reasons, **IT IS RECOMMENDED** that the Commissioner's motion for summary judgement be **GRANTED** and Plaintiff's motion for summary judgment be **DENIED**. The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and

Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local*, 231, 829 F.2d 1370,1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: June 29, 2007                                         s/Steven D. Pepe
Flint, Michigan                                            United States Magistrate Judge


CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2007, I electronically filed the foregoing paper with the Clerk Court using the ECF system which will send electronic notification to the following: James A. Brunson, AUSA, Darwin D. Dudley, Esq., and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: Social Security Administration - Office of the Regional Counsel, 200 W. Adams, 30th. Floor, Chicago, IL 60606

                                                       s/ James P. Peltier
                                                       James P. Peltier
                                                       Courtroom Deputy Clerk
                                                       U.S. District Court
                                                       600 Church St.
                                                       Flint, MI 48502
                                                       810-341-7850
                                                       pete_peliter@mied.uscourts.gov